UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| ROBERT L. HOLLEMAN, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. 1:09-cv-1510-TWP-DKL |
| C.A. PENFOLD, EDWIN BUSS, M. HALE, LT. S. KING, LT. A. PIRTLE, OFFICER VAN HORN, OFFICER HANCOCK, | ) | |
| Defendants. | ) | |

**ENTRY DISCUSSING MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Robert Holleman ("Holleman"), an inmate at the Wabash Valley Correctional Facility ("Wabash Valley") brings this action pursuant to 42 U.S.C. § 1983 alleging that the defendants unconstitutionally retaliated against him. The defendants, Chuck Penfold, Edwin Buss, Marty Hale, Steven King, Laurie Petty, Amanda Pirtle, Shawn Van Horn and Jeffrey Hancock (collectively, "Defendants"), are each employed by the Indiana Department of Correction ("IDOC").

Defendants seek resolution of Holleman's claims through the entry of summary judgment. For the reasons set forth herein, the Defendants' Motion [Dkt. #87] is granted.

**I. STANDARD OF REVIEW**

A motion for summary judgment must be granted if "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Scott v. Edinburg,* 346 F.3d 752, 755 (7th Cir. 2003) (quoting Fed.R.Civ.P. 56(c) and citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)). A fact is material if it might affect the outcome of the suit under the governing law, and a dispute about a material fact is genuine only if the

evidence would allow a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

The non-moving party bears the burden of demonstrating that such a genuine issue of material fact exists. *See Harney v. Speedway SuperAmerica, LLC,* 526 F.3d 1099, 1104 (7th Cir. 2008) (citing cases). "When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must — by affidavits or as otherwise provided in this rule — set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." Fed.R.Civ.P. 56(e)(2).

To support an assertion that a fact cannot be, or is genuinely disputed, a party must (a) cite to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers or other materials, (b) show that the materials cited do not establish the absence or presence of a genuine dispute, or (c) show that an adverse party cannot produce admissible evidence to support the fact. Fed.R.Civ.P. 56(c)(1)(A) and (B). If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may consider the fact undisputed for purposes of the motion and grant summary judgment if the motion and supporting materials, including the facts considered undisputed, show that the movant is entitled to it. Fed.R.Civ.P. 56(e).

## II. HOLLEMAN'S RESPONSE

Holleman filed an opposition to the motion for summary judgment. His opposition consists of a memorandum and an affidavit. Because Holleman is proceeding without counsel, he was notified of the nature of the Defendants' motion for summary judgment, of the proper

2

manner in which to respond, and of the consequences of failing to respond properly. Holleman's response does not include, and is not accompanied by, the *Statement of Material Facts in Dispute* required by Local Rule 56.1(b). The response rests on hearsay and deals with some matters not relevant to the claims on which the action has proceeded. A court "may consider only admissible evidence in assessing a motion for summary judgment." *Gunville v. Walker,* 583 F.3d 979, 985 (7th Cir. 2009) (citing cases). The opposing party's burden cannot be met with conclusory statements or speculation. *See Greer v. Board of Education,* 267 F.3d 723, 727 (7th Cir. 2001) (self-serving legal conclusions are not statements of fact and do not suffice as a proper response to a Rule 56.1 statement); *Cliff v. Board of School Commissioners,* 42 F.3d 403, 408 (7th Cir. 1994) (citing *McDonnell v. Cournia,* 990 F.2d 963, 969 (7th Cir. 1993)). Expressions of an affiant's opinion or his legal conclusion "are totally ineffectual, and are not to be given any consideration or weight whatsoever." *G.D. Searle & Co. v. Chas. Pfizer & Co., Inc.,* 231 F.2d 316, 318 (7th Cir. 1956); *see also Lujan v. National Wildlife Federation,* 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L.Ed.2d 695 (1990) ("The object of [Rule 56(e)] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."). The consequence of these circumstances is that he has conceded the defendants' version of the events. *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission."); *see also Yancick v. Hanna Steel Corp.,* 2011 WL 3319568, at *11 (7th Cir. Aug. 3, 2011); *Wackett v. City of Beaver Dam,* 642 F.3d 578, 582 n.1 (7th Cir. 2011). This does not alter the standard for assessing a Rule 56(a) motion, but does "reduc[e] the pool" from which the facts and inferences relative to such a motion may be drawn. *Smith v. Severn,* 129 F.3d 419, 426 (7th Cir. 1997).

## III. FACTS

Holleman is incarcerated at Wabash Valley, a prison located in Carlisle, Indiana. Holleman alleges that pursuant to facility policy, offenders in G Housing Unit were to receive 20 minutes for mealtime, but were getting only 6 to 11 minutes. On March 24, 2008, he stayed out of his cell for 15 minutes to eat his meal, even after an announcement by staff to lock up. Other offenders stayed out as well. At lunch on March 25, 2008, he again stayed out of his cell to eat past the staff announcement to lock up, and the Sergeant, Counselor Morris, Officer Hancock and Lt. Petty observed this behavior. On March 26, 2008, at breakfast, Lt. Pirtle told Holleman he was holding up the line, he responded that he had 20 minutes by policy, and Lt. Pirtle said that from then on, Holleman's range would eat last.

Holleman alleges that thereafter Lt. Petty plotted to get him removed from G Housing Unit and back to the Secured Housing Unit. Holleman also alleges that Lt. Petty went to Unit Team Manager Hale ("Hale") to get him assigned to a re-therm job because that would require him to work during meals, preventing him from holding up the "normal" 6 to 11-minute meal turnover. Holleman is a licensed barber but was refused assignment as a barber, instead being assigned to re-therm.

Lt. Petty had no input into the decision to transfer Holleman to re-therm and did not talk to the barber to tell him not to hire Holleman as a barber. Hale had no input into the transfer or assignment of Holleman to the re-therm job in March of 2008. Neither Hale nor Lt. Pirtle told the barber, Harold Brown, that Holleman is a trouble-maker and neither asked him not to hire Holleman as a barber. According to Lt. Pirtle, he opposed assignment of Holleman to the re-therm job because Holleman pushes the limits of prison security and rules and the re-therm area is supervised by less experienced staff.

Holleman alleges that Lt. Pirtle and Officer Christie (who is not a defendant) began "tearing up cells" to intimidate and harass offenders who wanted more than six minutes to eat. Because there are requirements for conducting a minimum number of searches every shift, Lt. Pirtle used the idle time that the offenders were out of their cells to do the searches so that the time could be put to use. Holleman wrote a letter to Hale complaining about Lt. Pirtle. As to Hale, Holleman alleges he was re-classified to the re-therm job in retaliation for taking his allotted time to eat. Hale, however, had no input into the transfer or assignment of Holleman to the re-therm job in March of 2008 and did not ask the barber not to hire Holleman.

Holleman alleges his commissary orders were missing after cell searches. Hale did not cancel his commissary orders.

One of Holleman's jobs was cleaning, including cleaning doors. Holleman was charged with interfering with a locking device for rattling a door to the control pod. Holleman claims this was a false conduct report that the screening officer would not dismiss. Hale and Lt. Pirtle had no input into the conduct report. The report was written by Officer Van Horn because Holleman shook the control pod door, mimicking staff's method of letting the staff member inside the control pod know that a staff member outside is seeking entry, in an apparent effort to gain access to the control pod. Officer Van Horn did not retaliate against Holleman.

Lt. Petty and two non-defendants were on a Conduct Adjustment Board that heard Holleman's disciplinary case. Holleman alleges that Lt. Petty changed the conduct report from interfering with a locking device to disorderly conduct, in retaliation for Holleman's attempts to get the eating time changed, and found him guilty with no evidence. The Report of Disciplinary Hearing shows that the charge was reduced to attempting to disrupt security of facility with the Disciplinary Hearing Board. The sanctions imposed were a written reprimand and loss of

5

telephone privileges and commissary privileges for two months. Holleman alleges that at the end of the hearing, Lt. Petty called Hale to have him moved back to the Secured Housing Unit. Holleman alleges he was moved in retaliation for refusing to lock up during mealtimes when told to do so, and was moved without a hearing, resulting in being placed on idle/no pay status. Holleman further alleges that the Classification Department continued the retaliation by approving the idle/no-pay status, denying his appeal and denying amending the appeal. Holleman alleges he was removed from the Action, Consequences, Treatment Program before his appeal was decided and was denied assignment to Purposeful Living Units Serve because of the conduct violation.

The disciplinary proceeding was appealed to Penfold, who denied the appeal because there was no grievous loss. Holleman asked to amend his appeal and was told by Penfold to resubmit it, but when Holleman did so, the appeal was denied again. Holleman alleges that Hale submitted a new re-classification request that was decided with no hearing or notice, resulting in his transfer back to the Secured Housing Unit. Because of the move, Holleman alleges that he lost a grant and could not go to school.

Holleman alleges that on May 28, 2008, Lt. Petty told Officer Hancock to write conduct reports on ten offenders for engaging in a group demonstration at supper, which reports Lt. Petty helped Officer Hancock write. Holleman alleges that on June 13, 2008, Lt. King, the disciplinary hearing officer, refused to view the videotape of the incident and did not ask the other members of the board for their votes. Holleman alleges that on appeal, the finding was reduced by the Superintendent to a Class C disorderly conduct violation but that there was no evidence and the finding was the product of retaliation by Lt. King. Holleman was offered a job as a barber in E Housing Unit but could not take that job because the disciplinary finding plus the

earlier disciplinary finding were used to send him back to the Secured Housing Unit. Holleman alleges he appealed to Commissioner Buss and Penfold but lost the appeals. However, Hale and Lt. Pirtle did not retaliate against him.

The only allegation pertaining to Buss, who was then the Commissioner of the IDOC, is that he is to ensure administration and oversee the penal system in Indiana in accordance with the laws.

## IV. DISCUSSION

A.   <u>**Personal Involvement of Buss and Penfold**</u>

To succeed on his claims, Holleman must show that the Defendants were personally responsible for the constitutional violation, meaning that they facilitated, approved, condoned, or ignored the violation. *Knight v. Wiseman*, 590 F.3d 458, 462-63 (7th Cir. 2009); *Grieveson v. Anderson*, 538 F.3d 763, 775-76 (7th Cir. 2008); *Johnson v. Snyder*, 444 F.3d 579, 583-84 (7th Cir. 2006). It is an established ingredient of § 1983 jurisprudence, that without personal liability, there can be no recovery under 42 U.S.C. § 1983. *Burks v. Raemisch,* 555 F.3d 592, 593-94 (7th Cir. 2009) ("Section 1983 does not establish a system of vicarious responsibility. Liability depends on each defendant's knowledge and actions, not on the knowledge or actions of persons they supervise.... *Monell's* rule [is that] public employees are responsible for their own misdeeds but not for anyone else's.") (citing *Monell v. New York City Dep't of Social Services,* 436 U.S. 658 (1978)).

Defendants Buss and Penfold argue that they cannot be held liable for Holleman's claims because they had no personal involvement in the challenged actions. The sole allegation against then-Commissioner Buss is that he is responsible for the entire IDOC. But the supervisory position of Commissioner Buss does not make him liable for misdeeds of employees. *Ashcroft v.*

*Iqbal,* 129 S. Ct. 1937, 1948 (2009) ("Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Holleman also alleges that he appealed the disciplinary action to Commissioner Buss, implying a personal involvement because of that appeal. This is insufficient to impose liability on Commissioner Buss. *See Johnson v. Snyder,* 444 F.3d 579, 583-84 (7th Cir. 2006) (letters to director insufficient to create a genuine issue of material fact regarding personal responsibility of director, where director had delegated responsibility for reviewing grievances, and there was no evidence that director had read letters). Accordingly, Commissioner Buss' motion for summary judgment must be granted.

As the Department's Final Reviewing Authority on disciplinary matters, all disciplinary appeals went to Penfold. This is insufficient to support liability against Penfold. *See Greeno v. Daley,* 414 F.3d 645, 656-57 (7th Cir. 2005) (only persons who cause or participate in the violations are responsible). Therefore, Penfold's motion for summary judgment must be granted.

**B.** **Retaliation**

Holleman claims he was retaliated against for staying out of his cell to eat past the announcement to lock up and for sending letters seeking redress for the retaliation.

A retaliation claim must be premised on conduct that is protected by the First Amendment, and an inmate's conduct is not protected when he refuses to comply with a legitimate prison regulation. *See Watkins v. Kasper,* 599 F.3d 791, 799 (7th Cir. 2010) (concluding "that the confrontational, disorderly manner in which Watkins complained about the treatment of his personal property removed this grievance from First Amendment protection."). Therefore, any claim that Holleman was retaliated against for refusing to lock up when told to do so must fail.

8

In addition to asserting that he was retaliated against for failing to lock up, Holleman also argues that he was retaliated against for filing grievances and sending letters regarding the Defendants' actions. This conduct may be actionable because a prison official may not retaliate against a prisoner because that prisoner filed a grievance. *See Babcock v. White*, 102 F.3d 267, 274-75 (7th Cir. 1996). This is so even if the adverse action does not independently violate the Constitution. *See id.* at 275.

"To establish retaliation, the inmate must show that he has evidence from which a reasonable jury could find that the defendants' knowledge of his protected activity was a substantial or motivating factor in their decision to take an adverse action against him." *Johnson v. Kingston*, 292 F.Supp.2d 1146, 1153 (W.D. Wis. 2003). A prisoner plaintiff may make this showing by producing evidence of a defendant's comments indicating that the defendant subjected the plaintiff to adverse treatment because of the plaintiff's protected activity. *Johnson*, 292 F.Supp.2d at 1154. When undertaking the retaliation inquiry, the court should be careful to avoid "excessive judicial involvement in day-to-day prison management." *Babcock*, 102 F.3d at 275 (quoting *Pratt v. Rowland,* 65 F.3d 802, 807 (9th Cir. 1995)). "[W]e should 'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Id.* In addition, a plaintiff cannot establish retaliation simply by showing that the protected activity took place before the alleged retaliatory action. *Johnson*, 292 F.Supp.2d at 1154.

> An adverse act following hard on the heels of the exercise of a protected right might be suspicious but it would not be enough by itself to allow a reasonable jury to find that it was a reason for the defendants' decision to take an adverse action against the plaintiff. The plaintiff must be able to point to other reasons that suggest a relationship between the two events.

*Id.*

Here, the Defendants assert that they did not take any action to retaliate against Holleman. Having failed to present evidence as required by Local Rule 56.1 of the *Federal Rules of Civil Procedure*, Holleman has submitted no evidence to the contrary. His argument that a chronology of events is sufficient to state a cause of action for retaliatory treatment does not suffice because a chronology is sufficient only to state a claim, not necessarily to survive summary judgment. *See Johnson*, 292 F.Supp.2d at 1154. Holleman has not pointed to any other reasons that suggest a relationship between the two events. *Id.* Because the Defendants have presented evidence which shows that they did not retaliate against Holleman and he has presented no evidence to the contrary, the motion for summary judgment must be granted.

## V. CONCLUSION

The Defendants' motion for summary judgment [Dkt. 87] is **GRANTED**. Judgment consistent with this Entry shall now issue.

SO ORDERED.

Date: 02/21/2012

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Robert Holleman, #10067
Wabash Valley Correctional Facility
6908 Old U. S. Highway 41
P.O. Box 500
Carlisle, Indiana 47838

David A. Arthur
Indiana Office of the Attorney General
david.arthur@atg.in.gov